**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **NY MACHINERY INC.,** *et al.*,<br><br>**Plaintiffs,**<br><br>v.<br><br>**THE KOREAN CLEANERS MONTHLY,** *et al.*,<br><br>**Defendants.** | **Case No. 17–cv–12269–ESK**<br><br>**OPINION AND ORDER** |

**KIEL, U.S.M.J.**

  **THIS MATTER** is before the Court on the motion (Motion) of plaintiffs NY Machinery Inc. (NY Machinery) and Kleaners LLC (Kleaners) for summary judgment pursuant to Federal Rule of Civil Procedure (Rule) 56 in their favor on all claims in the amended complaint. (ECF No. 182 through ECF No. 182-8; ECF No. 183 through ECF No. 183-5.) Defendants The Korean Cleaners Monthly (Cleaners Monthly) and John Chung, also known as Seung Chae Chung, filed papers in opposition to the Motion (ECF Nos. 190, 190-1), and plaintiffs filed papers in reply (ECF No. 191 through ECF No. 191-4). The parties have consented to my authority as a Magistrate Judge to conduct all proceedings in this case. (ECF No. 105). The Motion was held in abeyance to allow for the parties to engage in settlement discussions, which were not ultimately successful. (ECF Nos. 193, 194, 195, 197.) For the following reasons, the Motion is DENIED.

  I. **FACTS AND PROCEDURAL HISTORY**

  The facts and claims at issue in this case have been addressed previously. (*See* ECF Nos. 15, 30, 40 (opinions entered by District Judge Wigenton in May 2018, November 2018, and January 2019); ECF No. 67 (opinion entered by

Magistrate Judge Wettre in August 2019).)  The aspects of the case that are necessary to resolve the Motion will be restated here.

NY Machinery: (a) is based in Irvington, New Jersey; (b) sells dry cleaning machines, laundry machines, and other related products; and (c) is owned by Robert Lee.  (ECF No. 17 pp. 1, 4.)  Lee was assigned a patent for and sells a product called "EM Soap," which plaintiffs describe as "a petroleum-based dry cleaning detergent that contains [effective microorganisms] and works to, among other things, dissociate contaminants, eradicate harmful bacteria, suppress static formation and promote antioxidant formation, which are beneficial in the dry cleaning process."  (*Id.* p. 4; *see* ECF No. 182-4 p. 2 (United States Patent No. 8,110,009).)  Kleaners: (a) was founded in 2017; (b) was owned and operated by Lee; (c) was based at the same address as NY Machinery; and (d) published a magazine geared toward "the Korean dry-cleaning industry."  (ECF No. 17 pp. 1, 3.)

Chung publishes, controls, and writes most of the articles in Cleaners Monthly, which: (a) is based in Englewood, New Jersey; (b) was founded in 1993; (c) is "a [monthly] Korean-language trade publication that focuses on Korean dry cleaners and laundromats"; and (d) is circulated in South Korea, the United States, and Canada.  (*Id.* pp. 1, 4; ECF No. 182-2 pp. 3, 4; ECF No. 183-1 pp. 153, 160, 163; ECF No. 190 p. 5.)

NY Machinery had previously advertised its products and services in Cleaners Monthly, but NY Machinery stopped doing so in October 2016 for reasons that are disputed by the parties.  (ECF No. 17 p. 1; *compare* ECF No. 182-2 p. 5 (plaintiffs asserting that NY Machinery was concerned "with how Chung was using his authority as the primary Korean dry-cleaning trade publication to manipulate Korean Americans in the industry"), *with* ECF No. 190-1 p. 4 (defendants asserting they stopped accepting NY Machinery's advertising after Lee demanded a discount to advertise in Cleaners Monthly).)  Soon thereafter, NY Machinery's Lee created Kleaners to market NY Machinery's

products and services and to compete with Cleaners Monthly. (ECF No. 182-2 p. 5.) According to plaintiffs, defendants commenced what plaintiffs characterize as a defamatory campaign against them in either December 2016 or January 2017 in retaliation, ultimately causing NY Machinery to lose customers and causing Kleaners to dissolve in 2018. (*Id.* pp. 6, 62.)

### A. Plaintiffs' Allegations

Plaintiffs allege that defendants: (a) published articles falsely deriding the quality of NY Machinery's products and services; (b) disseminated false and defamatory statements to NY Machinery's existing and prospective customers; (c) harassed NY Machinery's customers; (d) disseminated false statements that Kleaners fraudulently boosted its circulation numbers; and (e) harassed the subscribers and advertisers of Kleaners. (ECF No. 17 pp. 2, 3.) Plaintiffs also allege that Chung disseminated falsehoods about NY Machinery's products and services verbally and through electronic communications. (*Id.* p. 10.) Among the allegedly false or defamatory statements were: (a) NY Machinery is an "outright crook," "a fraud," a "liar," and "deceptive," and that NY Machinery's detergents, filters, and other products are "bogus," a "scam," "fake," and "phony"; (b) EM Soap does not actually contain effective microorganisms as an ingredient; (c) NY Machinery's specialized EM filter is the same as any other filter, and thus is a "ghost product"; (d) NY Machinery's dry cleaning machines are of inferior quality because they are manufactured in China, and that the products of NY Machinery's competitors were superior; and (e) NY Machinery was deceiving its dry cleaning customers in a criminal manner. (*Id.* pp. 12, 13; ECF No. 182-1 p. 28; ECF No. 182-2 pp. 6, 7, 20, 21, 22, 26, 33, 40, 51.)

Plaintiffs allege that prospective customers who were in the process of purchasing NY Machinery's machines, EM Soap, and filters cancelled their orders after seeing the negative articles published in Cleaners Monthly, and that many existing NY Machinery customers stopped purchasing EM Soap and filters

3

from NY Machinery. (ECF No. 17 p. 11.) Plaintiffs further allege that due to the damage to NY Machinery's reputation caused by defendants, many dealers and distributors ended their existing business relationships with NY Machinery, resulting in decreased access and decreased sales to the customers of those dealers and distributors in their respective local markets. (ECF No. 182-2 pp. 59, 60.) Plaintiffs also assert that Chung contacted industry organizations to further besmirch their good names. (*Id.* p. 41 (Chung stating in an email to a dry cleaning industry organization that NY Machinery's products were not effective, and that the organization should consider not publishing NY Machinery's advertisements in its newsletter).) Plaintiffs allege that this situation inevitably resulted in a decrease in NY Machinery's annual revenue. (ECF No. 182-3 pp. 8, 9.) Lee asserts in a declaration several instances wherein he was called in 2017 and 2018 by certain customers who expressed concern over NY Machinery's products as a result of articles in Cleaners Monthly. (*See generally* ECF No. 182-3.)

### B.  Causes of Action

Plaintiffs now assert eight causes of action against defendants to recover damages for: (a) unfair competition in violation of the Lanham Act, 15 U.S.C. §1125(a); (b) false advertising in violation of the Lanham Act; (c) unfair competition in violation of N.J.S.A. 56:4-1; (d) common law unfair competition; (e) defamation *per se*; (f) tortious interference with prospective economic advantage; (g) false light; and (h) trade libel. (ECF No. 17 pp. 12–27.)

## II.  DISCUSSION

It is not necessary to restate the standard for resolving a motion for summary judgment made pursuant to Rule 56, because that standard has been enunciated previously. *See* Fed.R.Civ.P. 56(a) (providing for an award of summary judgment if there are no genuine disputes of material fact and the movant is entitled to judgment as matter of law); *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247–48 (1986) (setting forth the standard); *United States ex rel. Kosenke v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009) (setting forth the standard).   I will analyze each argument addressing each claim in turn.

### A. Lanham Act, Unfair Competition, and False Advertising Claims

On a motion for summary judgment, claims brought under the Lanham Act to recover damages for unfair competition and false advertising "are measured by identical standards."   *Cartier Int'l A.G. v. Daniel Markus, Inc.*, No. 10-01459, 2013 WL 5567150, at *11 (D.N.J. Oct. 8, 2013); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 136 (2014) (noting "the Lanham Act treats false advertising as a form of unfair competition"); *Diversified Indus., Inc. v. Vinyl Trends, Inc.*, No. 13-06194, 2016 WL 6897783, at *4, *5 (D.N.J. Nov. 22, 2016) (noting unfair competition claims under the Lanham Act encompass false advertising claims).   The Lanham Act provides in relevant part:

> (a) Civil action
>
>> (1) Any person who, on or in connection with any goods or services ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which— ...
>>
>>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>>
>> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

To establish the entitlement to summary judgment on an unfair competition claim and on a false advertising claim under the Lanham Act, a plaintiff must demonstrate as a matter of law:

> 1) that the defendant has made false or misleading statements as to his own product or another's; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Wakefern Food Corp. v. Marchese*, No. 20-15949, 2021 WL 3783259, at *4 (D.N.J. Aug. 26, 2021) (internal alterations omitted) (citing *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014)).  To determine whether speech is considered to be commercial advertising, it must be determined whether the speech is indeed an advertisement, whether the speech refers to a specific product or service, and whether the speaker has an economic motivation for the speech.  *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1017 (3d Cir. 2008).  In order for representations to constitute commercial advertising or promotion under the Lanham Act, they must be:

> (1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) for the purpose of influencing customers to buy the defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within the industry.

*Columbia Trading Corp. v. Green Elecs., LLC*, No. 17-01309, 2018 WL 10150930, at *3 (D.N.J. July 27, 2018) (internal quotation marks and citation omitted).

Upon review of plaintiffs' arguments in support of the Motion to the extent that the Motion addresses the two Lanham Act claims and defendants' opposition to those arguments, I find that the statements published by defendants

concerning plaintiffs' products and services were commercial in nature and thus subject to review under the Lanham Act. It is uncontested that Lee created Kleaners to compete with Cleaners Monthly, and that defendants would have been motivated to maintain and expand the number of subscribers for Cleaners Monthly at the expense of Kleaners. In addition, it is uncontested that both plaintiffs' and defendants' goods and services traveled in interstate commerce.

However, I find that plaintiffs have not established entitlement to summary judgment on the Lanham Act unfair competition claim and false advertising claim. Plaintiffs have made an admirable showing of several instances wherein defendants published statements concerning the effectiveness of NY Machinery's products and the credibility of Kleaners that are, in the very least, questionable. For instance, plaintiffs submit supporting evidence that NY Machinery's EM Soap product was not scientifically found to be ineffective, despite defendants' statements to the contrary published in Cleaners Monthly and in electronic communications to NY Machinery's customers and business associates. (ECF No. 182-2 pp. 7, 8, 16, 17, 18, 21, 23, 24, 32, 33.) Specifically, Avomeen Analytical Services and Nova Biologicals tested EM Soap at defendants' request for certain microbes within its contents, but plaintiffs assert that the tests upon which defendants based their statements over the course of 2017 were not designed to detect the presence of effective microorganisms in the first instance and were merely screening tests for microbes in general. (ECF No. 183-2 pp. 13, 14, 22.) Plaintiffs argue further that defendants misleadingly stated that NY Machinery's products are of substandard quality because they are offered for sale only in the United States and not in Japan, and that such statements would be understood by those in the "Korean dry-cleaning industry" to impute deceit and malfeasance on NY Machinery's part. (ECF No. 182-1 pp. 14, 16, 17, 34; ECF No. 182-2 pp. 19, 20, 22.)

Plaintiffs have also submitted instances wherein defendants compared NY Machinery to a former president of South Korea who was criminally convicted

7

and imprisoned, referred to NY Machinery's business practices as "EM-Gate," and encouraged NY Machinery's customers to report NY Machinery to the Better Business Bureau and local prosecutors. (ECF No. 182-2 pp. 21, 23, 28, 29, 31, 32; *see* ECF No. 183-1 pp. 228, 229 (Chung testifying in his deposition that the phrase "EM-Gate" would be understood to convey a message about something scandalous or controversial due to the Watergate scandal that occurred during the presidential administration of Richard Nixon).)

In addition, plaintiffs raise an instance wherein an article was published in Cleaners Monthly claiming that industry expert Dan Eisen found NY Machinery's products to be ineffective. (ECF No. 182-2 p. 33.) Defendants continue to rely upon the findings that were allegedly relayed to them by Eisen. (ECF No. 190 p. 7.) However, upon being deposed for this case, Eisen testified that he may have made negative and derogatory statements about NY Machinery to Chung in a telephone conversation while "pacifying" Chung, and that Chung refused to retract the article when he requested that Chung do so. (ECF No. 183-3 pp. 144, 148; ECF No. 182-1 p. 28.) Defendants also published an article in reliance upon quotes from microbiologist Max Haggblom that NY Machinery's products were ineffective, but plaintiffs argue that defendants based the article in question on vague responses to defendants' emails and that those responses were taken out of context. (ECF No. 182-2 pp. 27, 28.) Plaintiffs also posit that Chung himself possesses no specialized expertise in assessing either the effectiveness or the safety of NY Machinery's products and NY Machinery's underlying patents. (*Id.* pp. 14–17, 25, 27.)

As plaintiffs correctly point out, there are instances in defendants' opposition to this portion of the Motion that are "substantively deficient." (ECF No. 191 p. 6.) But the deficiencies in defendants' papers filed in opposition to the Motion do not automatically guarantee that the Motion must be granted. When addressing a motion for summary judgment, despite any "deficiencies in the opponent[s'] evidence," a district court must still independently consider whether

the movants — in this instance, plaintiffs — are entitled to a judgment as a matter of law based upon the uncontested evidence submitted and the relevant case law. *See Patra v. Pa. State Sys. of Higher Educ.*, 779 F.App'x 105, 108 (3d Cir. 2019) (citing *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990)).

This matter presents triable issues concerning Chung's intentions that must be weighed by a jury, and nothing prevents plaintiffs from challenging Chung's credibility and professed reliance on the opinions of experts that were allegedly relayed to him upon cross-examination before the jury. *See Mest v. Cabot Corp.*, 449 F.3d 502, 514 (3d Cir. 2006) (holding that while the credibility of contradictory deposition testimony may be disputed, the summary judgment standard requires a court to look at all facts in the light most favorable to the non-moving party and reserve the issues of credibility for a jury); *see also Brunozzi v. Crossmark, Inc.*, No. 13-04585, 2016 WL 112455, at *4 (D.N.J. Jan. 11, 2016) (holding, in a case wherein the plaintiff provided "inconsistent deposition testimony" about the surrounding factual circumstances, the moving defendant "is not entitled to summary judgment on the basis of [plaintiff's] conflicting deposition testimony," because "[w]hile the conflicting testimony undercuts [plaintiff's] credibility," determining "[w]hich portions of [plaintiff's] deposition testimony are truthful is a job for the jury and not this Court").

Further, triable issues of fact remain for a jury to determine how those in the dry cleaning industry in general, and in what plaintiffs characterize as the "Korean dry-cleaning industry" in particular, would interpret and react to defendants' statements. As to plaintiffs' argument that defendants meant to convey a negative message about plaintiffs by stating that NY Machinery's products are not sold in Japan (ECF No. 182-1 p.20), as opposed to any other country, that is for a trier of fact to determine whether such statements are inflammatory in nature. Here, plaintiffs' Lanham Act claims, particularly the elements thereunder of deception and damages, are best left for a jury to address.

9

*Philadelphia Cervical Collar v. Jerome Grp., Inc.*, No. 00-02515, 2002 WL 126632, at *3, *4 (E.D. Pa. Jan. 30, 2002) (denying summary judgment on Lanham Act unfair competition and false advertising claims, as a jury should weigh the credibility of the testimony provided by a witness who reviewed a party's medical product at issue). A trier of fact should assess each instance that plaintiffs allege to be violative of the Lanham Act, and then determine whether any alleged decreases in profits experienced by plaintiffs were caused by defendants' conduct or by other economic factors. (*See* ECF No. 183-1 p. 161 (Chung testifying in his 2021 deposition that the circulation of his own publication, *i.e.*, Cleaners Monthly, dropped because the "[Covid] [p]andemic decimated this industry," and "[a]bout one-third of the industry closed down their stores").) The Motion to the extent that it addresses plaintiffs' Lanham Act claims is denied.

Unfair competition claims brought under New Jersey state law and the common law are considered to be "parallel" to claims brought under the Lanham Act, and are thus subject to the same analysis. *Smart Vent, Inc. v. USA Floodair Vents, Ltd.*, 193 F.Supp.3d 395, 424 n.43 (D.N.J. 2016); *see Congoo, LLC v. Revcontent LLC*, No. 16-00401, 2017 WL 5076397, at *7 (D.N.J. Nov. 3, 2017) (holding that when assessing unfair competition claims brought under the Lanham Act, New Jersey state law, and the common law in the context of a motion for summary judgment, "the identical test" is applied to each claim); *Buying for the Home, LLC v. Humble Abode, LLC,* 459 F.Supp.2d 310, 317 (D.N.J. 2006) (same). As a result, I will not conduct separate inquiries into the state law and common law unfair competition claims. Summary judgment as to those claims is also denied, for the same reasons set forth under the analysis for the Lanham Act claims.

### B. <u>Defamation *Per Se*</u>

To demonstrate the entitlement to summary judgment on a claim for defamation *per se*, a plaintiff must show: "(1) the assertion of a false and

10

defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *Livingstone v. Hugo Boss Store, Atl. City, N.J.,* No. 21-01971, 2021 WL 3910149, at *9 (D.N.J. Sept. 1, 2021), *appeal dismissed*, No. 21-02757, 2022 WL 845249 (3d Cir. Mar. 2, 2022). "In deciding whether a statement is defamatory a court must examine three factors: content, verifiability, and context." *McBride v. Twp. of Washington*, No. 19-17196, 2020 WL 3396802, at *8 (D.N.J. June 19, 2020). The publication at issue must be one that "imputes to [the plaintiff] conduct, characteristics, or a condition that would adversely affect [the plaintiff] in [the plaintiff's] lawful business or trade." *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 343 (3d Cir. 2005) (internal quotation marks and citations omitted). A statement that "explicitly imputes to [a business] fraud, deceit, dishonesty, or reprehensible conduct in relation to [a] product" can be found to be defamatory. *Gillon v. Bernstein*, 218 F.Supp.3d 285, 295–96 (D.N.J. 2016) (internal quotation marks and citations omitted).

To support their defamation claim to the extent that the allegedly offending statements appeared in Cleaners Monthly's articles, plaintiffs submit a declaration from a "journalistic ethics" expert, Robin Sherman, concerning the manner in which defendants were unethical and lacking in due diligence in his opinion. (ECF No. 182-2 pp.11, 16, 41; ECF No. 183-2 pp.36, 51.) Nevertheless, whether plaintiffs have met all of the elements for a defamation claim, including damages, should be determined by a jury. A jury should be permitted to determine whether Sherman's expert opinion is credible and demonstrates unequivocally that defendants behaved in an unethical manner, particularly in view of the tone displayed in Sherman's declaration. (*See, e.g.*, ECF No. 183-2 p.62 (in assessing an article published in Cleaners Monthly, Sherman stating: "Here we have an unnamed source paraphrasing an unnamed source!") (exclamation point from original).)

In addition, whether the additional communications from Chung by way of electronic communications and phone calls to NY Machinery's current and prospective customers were defamatory necessarily hinges upon whether the Cleaners Monthly articles were defamatory. As noted in the discussion concerning the Lanham Act claims, an assessment of those articles awaits a review by a trier of fact. As also noted in the discussion concerning damages for the Lanham Act claims, whether plaintiffs' profits suffered as a result of the defendants' conduct or due to other economic factors remains to be determined. Thus, in view of my decision denying the Motion to the extent it concerns the unfair competition claims under federal law, state law, and the common law, the Motion to the extent that it concerns the defamation *per se* claim is also denied. *See Konowicz v. Carr*, 838 F.App'x 1, 7 (3d Cir. 2020) (finding that the contradictory evidence on a defamation claim created a jury question); *Iglesias v. O'Neal*, No. 16-06291, 2020 WL 416197, at *3 (D.N.J. Jan. 27, 2020) (holding that contested defamation claims presented issues of fact that are best addressed by a trier of fact, even if a plaintiff "may have a noteworthy amount of evidence indicating that [a] [d]efendant's statements were false"). The "[c]redibility determinations" at issue here rightfully belong within "the province of the fact finder, not the … court." *Iglesias*, 2020 WL 416197, at *4.

### C. Tortious Interference with Prospective Economic Advantage

To establish entitlement to summary judgment on a claim for tortious interference with prospective economic advantage, a plaintiff must generally show five elements:

> (1) a plaintiff's reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the

12

> anticipated economic benefit in the absence of interference; and (5) damages resulting from the defendant's interference.

*Avaya Inc. v. Telecom Labs, Inc.*, No. 06-02490, 2014 WL 97335, at *13 (D.N.J. Jan. 7, 2014).

Plaintiffs have met the first element of the tortious interference claim, as they have demonstrated that: (a) NY Machinery was engaged in the pursuit of the dry cleaning business through offering its products and services for sale, had business relationships with dealers, suppliers, and customers, and was seeking new business; and (b) Kleaners had relationships with subscribers and advertisers, and was seeking new subscribers in an effort to increase circulation. *See Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, No. 10-00453, 2010 WL 5239238, at *3, *4 (D.N.J. Dec. 16, 2010). Establishing that a plaintiff was "in pursuit of business" is sufficient to show that a plaintiff had an expectation of economic benefit or advantage that was reasonable. *Id.* at *4. Defendants do not counter plaintiffs' arguments in support of this element.

Plaintiffs have also met the second element of a tortious interference claim by demonstrating that: (a) NY Machinery formerly advertised in defendants' publication; (b) Lee and Chung had known each other for several decades; and (c) Chung was well aware of plaintiffs' interests in their current business relationships and in their potential new business relationships. (ECF No. 182-1 p.26.) Defendants do not counter plaintiffs' arguments in support of the second element.

However, issues of fact remain as to whether plaintiffs have met the third, fourth, and fifth elements of the tortious interference claim. As to the third element, whether defendants' conduct was "intentional and wrongful" presents a genuine issue to be weighed by a trier of fact. *Varrallo v. Hammond Inc.*, 94 F.3d 842, 848 (3d Cir. 1996); *see The York Grp., Inc. v. Pontone*, No. 10-01078, 2014 WL 896632, at *25 (W.D. Pa. Mar. 6, 2014) (denying summary judgment motion on a tortious interference claim, as a jury should determine whether the

conduct in question was wrongful). Plaintiffs hinge their argument as to this element on the assertion that defendants failed to abide by what plaintiffs characterize as "journalistic codes of ethics and best practices for a business-to-business trade publication" in articles about NY Machinery. (ECF No. 182-1 p.29.) However, whether defendants can be deemed to have violated any journalism ethics is an issue for a jury to decide.

Consequently, issues of fact necessarily remain as to the fourth and fifth elements, as those elements await a determination on whether defendants' conduct was wrongful, and the analysis must stop at the third element. *See Benhur v. Madavaram*, No. 15-06826, 2017 WL 1034370, at *4 (D.N.J. Mar. 17, 2017) (denying award of summary judgment on a claim for tortious interference with prospective economic advantage, as issues of fact remained as to whether defendant's conduct was intentional or wrongful, and ending the analysis without addressing the subsequent elements); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 11-01857, 2012 WL 5554543, at *14 (D.N.J. Nov. 14, 2012) (same). The Motion to the extent that it addresses plaintiffs' tortious interference claim is denied.

### D. False Light

To be awarded summary judgment on a claim for false light, a plaintiff must show as a matter of law that a defendant raised "publicity that unreasonably places the [plaintiff] in a false light before the public." *Reilly v. Vivint Solar*, No. 18-12356, 2021 WL 261084, at *11 (D.N.J. Jan. 26, 2021) (internal quotation marks and citations omitted). In addition, a plaintiff must show as a matter of law that: (a) "the false light in which the [plaintiff] was placed would be highly offensive to a reasonable person; and [(b)] the [defendant] had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [plaintiff] would be placed." *Id.*

Plaintiffs rely upon the same instances of defendants' allegedly wrongful conduct raised in support of the previous claims addressed above to support the false light claim. (ECF No. 182-1 p.44 (concerning Cleaners Monthly's assertions about NY Machinery's products and services).) However, in view of my previous determinations concerning the claims for unfair competition, tortious interference with prospective economic advantage, and defamation, and viewing the evidence in the light most favorable to defendants, I find that genuine issues of material fact exist to be decided by a trier of fact. *See Iglesias*, 2020 WL 416197, at *3 (denying plaintiff's motion for summary judgment on a false light claim); *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, No. 01-03061, 2005 WL 8176263, at *11 (D.N.J. Feb. 7, 2005) (same). It is not unusual for a trial to be conducted concerning the merits of a false light claim. *See Charles Novins, Esq. P.C. v. Cannon*, 557 F.App'x 155, 157 (3d Cir. 2014) (concerning a jury trial conducted on defamation and false light claims). The Motion to the extent that it addresses plaintiffs' false light claim is denied.

### E. <u>Trade Libel</u>

To be awarded summary judgment on a claim for trade libel, a plaintiff must demonstrate as a matter of law that there was: "(1) [a] publication, (2) with malice, (3) of false allegations concerning the plaintiff's property, product or business, and (4) special damages." *Bocobo v. Radiology Consultants of S. Jersey, P.A.*, 477 F.App'x 890, 901 (3d Cir. 2012) (internal quotation marks, alterations, and citations omitted). "To allege malice in a trade libel … claim, the claimant must allege facts to suggest that the accused knew the statements were false or that they were published with reckless disregard for their falsity." *Pactiv Corp. v. Perk-Up, Inc.*, No. 08-05072, 2009 WL 2568105, at *10 (D.N.J. Aug. 18, 2009) (internal quotation marks and citations omitted). In addition:

> When predicating a damages claim on the general diminution in business, [a] [p]laintiff must prove facts showing an established business, the amount of sales for a

15

> substantial period preceding publication, the amount of sales for a period subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication, and facts showing the plaintiff could not allege the names of particular customers who withdrew or withheld their custom.

*Sciore v. Phung*, No. 19-13775, 2022 WL 950261, at *12 (D.N.J. Mar. 30, 2022) (internal quotation marks, alterations, and citations omitted). "[T]he need to prove such special damages requires that [p]laintiffs allege either the loss of particular customers by name, or a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication." *Intervet, Inc. v. Mileutis, Ltd.*, No. 15-01371, 2016 WL 740267, at *6 (D.N.J. Feb. 24, 2016) (internal quotation marks and citation omitted).

The pathway to ascertaining the merits of plaintiffs' trade libel claim necessarily leads to a trial before a trier of fact on the claim. Deciding whether plaintiffs have demonstrated that defendants are liable for engaging in conduct akin to trade libel "presents a genuine issue of material fact," and "there is no basis for making credibility determinations in lieu of trial." *Wolfe v. Gooding & Co., Inc.*, No. 14-04728, 2017 WL 3977920, at *3 (D.N.J. Sept. 11, 2017) (denying an award of summary judgment on a trade libel claim, as whether a "statement was made with knowledge or reckless disregard for its truth is a material issue of fact that cannot be resolved without a trial"). Whether plaintiffs have demonstrated that defendants acted with malice is for a trier of fact to determine, as "fact-finders [can] disagree as to whether [a party] acted with malice." *Mayflower Transit, LLC v. Prince*, 314 F.Supp.2d 362, 378 (D.N.J. 2004); *see Regis Ins. Co. v. A.M. Best Co., Inc.*, No. 10-03171, 2013 WL 775521, at *11 (E.D. Pa. Mar. 1, 2013) (denying summary judgment motion concerning a trade libel claim due to genuine issues of material fact that should be weighed by a trier of fact).

In addition, whether plaintiffs are entitled to special damages due to defendants' conduct on a potentially successful trade libel claim is a determination to be made by a trier of fact. *See Patel v. Patel*, No. 14-02949, 2015 WL 6735958, at *8 (E.D. Pa. Nov. 4, 2015) (denying summary judgment motion on a trade libel claim, as genuine issues of act remained as to plaintiff's alleged pecuniary loss). Despite the nature of the examples cited by plaintiffs as to defendants' conduct, such as referring to plaintiffs' products as being "fake," an award of summary judgment in plaintiffs' favor on the trade libel claim would not be appropriate. *See Tri-State Energy Sols., LLP v. KVAR Energy Sav. Inc.*, 884 F.Supp.2d 168, 175–76 (D. Del. 2012) (finding trier of fact must decide whether defendants' alleged conduct underlying a trade libel claim caused plaintiffs any economic harm). The Motion to the extent that it addresses plaintiffs' trade libel claim is denied.

### F.    Deficiencies in Papers

Plaintiffs argue in their reply brief that defendants have relied on documents in their papers filed in opposition to the Motion that were not produced during the period for discovery. (*See* ECF No. 191 pp. 8, 9.) However, plaintiffs have not separately moved to strike those documents. *See Tanvir v. Quest Diagnostics*, No. 05-01464, 2007 WL 2885822, at *1 (D.N.J. Sept. 27, 2007) (discussing cross-motion to strike an affidavit, wherein that affidavit had been filed in support of a motion for summary judgment, as the affiant had not been produced for a deposition during the discovery period). As a result, I will not address that argument here.

I point out that even though defendants' opposition papers presented instances of deficient responses to the Motion, plaintiffs are not entirely without fault in their papers. Plaintiffs' statement of undisputed material facts under Local Rule 56.1(a) that was filed in support of the Motion is replete with improper legal arguments, conclusory assertions, and speculative statements. (*See* ECF

No. 182-2 p. 6 ("Defendants commenced an appalling, all-out campaign publicly and repeatedly disseminating false and defamatory statements about Plaintiffs aimed to destroy Plaintiffs' business, under the guise of journalism"); *id.* p. 11 ("Defendants violated the ethical responsibilities adhered to by journalists and publishers"); *id.* p. 31 (a particular "article [in Cleaners Monthly] defied journalism ethical norms"); *id.* p. 37 (a certain "article was journalistically improper"); *id.* p. 35 (arguing that during a deposition, "Eisen … was visibly upset at Chung for falsely attributing those statements to him in the [Cleaners Monthly] article").) A statement of undisputed material facts should be free of such arguments and assertions, and should be comprised of straightforward factual recitations. *See* L.Civ.R. 56.1(a). Although not the basis for the denial of the Motion here, a motion for summary judgment can be denied for a movant's failure to abide by the strictures of Local Rule 56.1(a). *See Murray-Sims v. N.J. Transit Corp.*, No. 12-01821, 2014 WL 6991906, at *1 n.1 (D.N.J. Dec. 10, 2014); *Jones v. Sanko S.S. Co., Ltd.*, 148 F.Supp.3d 374, 379 n.9 (D.N.J. 2015).

Accordingly,

**IT IS** on this   **17th** day of **May 2023**   **ORDERED** that:

1. The Motion (ECF No. 182) is **DENIED**.
2. The Clerk is directed to terminate the Motion at ECF No. 182.
3. A telephone status conference is scheduled for **May 26, 2023 at 10:30 a.m.** before Magistrate Judge Edward S. Kiel. The dial in number is 1-888-684-8852 and the access code is 310-0383#. The parties shall file a joint letter, at least three days before the conference, advising of the status of settlement discussions and any other issues to be addressed.

　　　　　　　　　　　　　　　　　　 */s/ Edward S. Kiel*
　　　　　　　　　　　　　　　　　　**EDWARD S. KIEL**
　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**